IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VIRGINIA CHAPPELL,

                    Plaintiff,

    v.

THE HORSHAM TOWNSHIP POLICE
DEPARTMENT, et al.

                Defendants.

CIVIL ACTION
NO. 16-2650

## OPINION

Slomsky, J.                                                    February 21, 2017

## I.    INTRODUCTION

This case involves tragic circumstances for someone who has spent her life caring for pets. Plaintiff Virginia Chappell brings this civil rights action under 42 U.S.C. § 1983 against the Horsham Township Police Department ("Horsham PD"), Chief William J. Daly ("Chief Daly"), Police Officer Jeffrey Woodruff ("Officer Woodruff"), Police Officer Andrew Nisbet ("Officer Nisbet"), Police Officer Jose Ortiz ("Officer Ortiz"), and Lieutenant K. John Potts ("Lieutenant Potts") (collectively, "Defendants") for allegedly violating her Fourth and Fourteenth Amendment rights regarding the shooting and euthanization of her dog, Shayla. Additionally, Plaintiff brings state law claims for negligence and conversion.

Plaintiff's Second Amended Complaint ("SAC") contains six counts. The Counts and Defendants named in each one are as follows:[1]

---

[1]   Because certain Counts in the SAC do not list Plaintiff's claims separately, the Court is construing Plaintiff's SAC to assert the claims described in this Opinion.

- Count I alleges two separate claims for improper seizure of Plaintiff's dog in violation of the Fourth Amendment, and a violation of substantive due process under the Fourteenth Amendment against:

    1) Chief Daly, individually and in his official capacity;

    2) Officer Woodruff, individually and in his official capacity;

    3) Office Nisbet, individually and in his official capacity;

    4) Officer Ortiz, individually and in his official capacity; and

    5) Lieutenant Potts, individually and in his official capacity;

- Count II alleges a <u>Monell</u> municipal liability claim for violation of Plaintiff's constitutional rights against:

    1) Horsham Township Police Department; and

    2) Chief Daly in his official capacity;

- Count III alleges a failure to provide procedural due process in violation of the Fourteenth Amendment against:

    1) Chief Daly, individually and in his official capacity;

    2) Officer Woodruff, individually and in his official capacity;

    3) Office Nisbet, individually and in his official capacity;

    4) Officer Ortiz, individually and in his official capacity; and

    5) Lieutenant Potts, individually and in his official capacity;

- Count IV alleges negligence by the Horsham PD regarding Plaintiff's personal property;

- Count V alleges negligence by the Horsham PD regarding Plaintiff's dog; and

- Count VI alleges conversion against:

    1)  Chief Daly, individually;

    2)  Officer Woodruff, individually;

    3)  Office Nisbet, individually;

    4)  Officer Ortiz, individually; and

    5)  Lieutenant Potts, individually.

Before the Court is Defendants' Motion to Dismiss the SAC for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No 11.)  For reasons that follow, the Court will grant the Motion to Dismiss in part and deny it in part.

## II.   BACKGROUND[2]

On March 9, 2016, Plaintiff entered into a contract with Jonna Amentt ("Amentt") in which Amentt agreed to foster Shayla, a female Staffordshire mix canine.[3]  (Doc. No. 12 ¶ 12.) The contract provided that Plaintiff retained all property rights to Shayla through Rescue Dogs Rock Animal Rescue.  (Doc. No. 12, Ex. A at 5.)  The next day, Amentt began fostering Shayla in Hatboro, Pennsylvania, where she lived with her boyfriend, Thomas Kasee ("Kasee"), in his mother's house.  (Id. ¶¶ 12, 14, 17, Ex. A at 2.)

On March 12, 2016, Kasee asked the Horsham PD to assist him in taking Shayla to the SPCA, stating she was behaving aggressively.  (Id. ¶ 18, Ex. B.)  Officers Woodruff and Nisbet responded to the call.  (Id. ¶¶ 23, 30.)  Kasee told Officer Woodruff that Amentt had adopted Shayla several days prior.  (Id. ¶ 24.)  Officer Woodruff never attempted to contact Amentt.  (Id.

---

[2]  The facts are taken from the SAC and viewed in the light most favorable to Plaintiff.

[3]  Staffordshire bull terriers and American Staffordshire terriers are commonly known as "pit bulls."  See Dias v. City and County of Denver, 567 F.3d 1169, 1173 (10th Cir. 2009); Dog Federation of Wisconsin, Inc. v. City of South Milwaukee, 178 Wis.2d 353, 379 (Wis. Ct. App. 1993).

¶ 25.)  Officer Woodruff entered the yard without a catchpole or an assisting officer present.  (Id. ¶ 27.)  At that point, he was unable to secure Shayla, and exited the yard.  (Id. ¶ 28.)   Instead of waiting for a catchpole to arrive, Officer Woodruff entered the property again and, without any provocation, fired two shots at Shayla.  (Id. ¶¶ 31-32.)  These actions were not in compliance with Horsham PD's Animal Control Policy.  (Id. Ex. C at 5.)

One shot entered Shayla between her shoulders and exited near her upper right front leg.  (Id. ¶ 33, Ex. B.)  Shayla then retreated to the back door of the house.  (Id. ¶ 34.)  Next, Officer Ortiz arrived at the house with a catchpole.  Officers Woodruff and Nisbet caught Shayla with the pole and dragged her from the yard to Officer Woodruff's police cruiser.  (Id. ¶¶ 36-40.)  Shortly thereafter, Lieutenant Potts arrived at the property, interviewed Officer Woodruff and Kasee, and reviewed the scene.  (Id. ¶ 39.)  During these discussions, Shayla remained bleeding in Officer Woodruff's car.  (Id. ¶ 40.)  Officer Woodruff then took Shayla to the SPCA to be euthanized.  (Id. ¶¶ 38-47.)  By the time Shayla was euthanized, Officer Woodruff had learned that Shayla was a foster dog.  (Id. ¶ 45.)  Though Shayla was wearing dog tags with Plaintiff's contact information, Plaintiff was never contacted regarding Shayla's euthanization.  (Id. ¶¶ 37, 42-47.)

On March 16, 2016, Lieutenant Potts submitted a memorandum to Chief Daly approving Officer Woodruff's use of force.  (Id. ¶ 48.)  Chief Daly approved the memorandum on March 21, 2016.  (Id. ¶ 49.)  Lieutenant Potts also approved the reports of Officers Woodruff and Nisbet on March 23, 2016.  (Id. ¶ 50.)

On May 23, 2016, Plaintiff filed the instant civil action against Defendants.  (Doc. No. 1.)  Defendants filed a Motion to Dismiss on June 27, 2016.  (Doc. No. 4.)   On July 15, 2016,

Plaintiff filed her First Amended Complaint.[4]  (Doc. No. 10.)  Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint on July 20, 2016.  (Doc. No. 11.)

On August 3, 2016, Plaintiff filed her Second Amended Complaint ("SAC").  (Doc. No. 12.)  On August 5, 2016, she filed a Motion for Leave to File the SAC.  (Doc. No. 13.)  Judge Stewart Dalzell, to whom this case was originally assigned, granted the Motion for Leave to File on September 13, 2016.  (Doc. No. 15.)  As noted above in the SAC, Plaintiff alleges that Defendants violated her right to be free of unreasonable seizures and deprived her of substantive and procedural due process in violation of the Fourth and Fourteenth Amendments.[5]  Id. Plaintiff also alleges a Monell claim and state law claims of negligence and conversion.  Id.

As permitted by Judge Dalzell, Defendants filed a supplemental brief in support of their Motion to Dismiss Plaintiff's First Amended Complaint on September 23, 2016.  (Doc. No. 16.) Plaintiff filed an Opposition to Defendants' Motion to Dismiss on September 30, 2016.  (Doc. No. 18.)  On January 4, 2017, this case was assigned to this Court (Slomsky, J.) for all further proceedings.  (Doc. No. 19.)  The Motion to Dismiss is now ripe for a decision.

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss for want of standing is brought under Rule 12(b)(1) because standing is a jurisdictional matter.  Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (internal citation omitted).

---

[4]   On January 9, 2017, Defendants' initial Motion to Dismiss (Doc. No. 4) was denied without prejudice as moot.  (Doc. No. 20.)

[5]    In Count II of the SAC, Plaintiff also references the right to be free from excessive use of force.  (Doc. No. 12 ¶ 67.)  However, Plaintiff withdrew her excessive force claim from her complaint.  (Doc. No. 18-1 at 23.)

A district court considering a motion pursuant to Rule 12(b)(1) must first determine whether that motion presents a "facial" attack or a "factual" attack on the claim at issue "because that distinction determines how the pleading must be reviewed." Id. A facial challenge contests the sufficiency of the complaint because of a defect on its face, such as lack of diversity among the parties or the absence of a federal question. See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In a facial challenge, the court must consider the allegations of the complaint as true and consider only those allegations in the complaint and the attached documents in deciding whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (terming a facial attack as "an alleged pleading deficiency"). Thus, a court applies the same standard of review used in considering a motion to dismiss under Rule 12(b)(6).

A factual attack, on the other hand, challenges the actual failure of the plaintiff's claims to "comport with the jurisdictional prerequisites." Pa. Shipbuilding, 473 F.3d at 514. Such an evaluation may occur at any stage of the proceeding, but only after the defendant has filed an answer. Mortensen, 549 F.2d at 891-92. When a court is confronted with a factual attack, "[it] is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and the plaintiff bears the burden of showing that jurisdiction does in fact exist. Id. A district court may consider evidence outside the pleadings. Gould Elecs. Inc., 220 F.3d at 176 (internal citation omitted). No presumptive truthfulness attaches to the plaintiff's allegations, such that the existence of disputed material facts does not preclude a court from evaluating the merits of jurisdictional claims. Mortensen, 549 F.2d at 891.

**B.      Motion to Dismiss Under Rule 12(b)(6)**

The standard for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township set forth a three-part analysis that a district court must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

When considering a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  The court also may consider certain documents not made part of the complaint.  As noted in Miller v. Cadmus Communications:

> Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits.  However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.

No. 09-2869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 nn.1-2 (3d Cir. 1995)); see also Doe v. Hesketh, 77 F. Supp. 3d 440, 445 (E.D. Pa. 2015).

## IV.    ANALYSIS

Defendants move to dismiss Plaintiff's SAC for, inter alia, lack of standing and failure to state a claim.  Specifically, Defendants argue:

1)    Plaintiff lacks standing to bring this suit;

8

2)   Plaintiff's substantive due process claim in Count I is barred by the more specific provision rule;

3)   Plaintiff's procedural due process claim in Count III fails to state a claim because Plaintiff was not entitled to pre-deprivation process;

4)   Plaintiff has failed to show the personal involvement of Chief Daly in the claims made against him in Counts I, II, III, and VI, and the personal involvement of Lieutenant Potts, Officer Nisbet, and Officer Ortiz in the claims made against them in Counts I, III, and VI.

5)   Defendants are entitled to qualified immunity;

6)   Plaintiff has failed to state a claim in Count II under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978);

7)   Plaintiff's claims against the Horsham PD and the police officers in their official capacity as alleged in Counts I, II, and III fails to state a claim;

8)   Plaintiff has failed to state a claim under the Pennsylvania Political Subdivision Tort Claims Act in Counts IV and V against the Horsham PD;

9)   Plaintiff's claims do not support punitive damages; and

10)  Any attempt to amend the complaint would be futile.

The Court will address each argument below.

### A.   Plaintiff has Standing

Defendants argue that Plaintiff does not have standing to bring the instant action. A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) because standing constitutes a jurisdictional threshold. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (internal citation omitted). As noted, our first step is to determine

whether the movant proffers a facial or factual attack.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).

Here, Defendants filed their motion to dismiss before they answered Plaintiff's First Amended Complaint, which has been subsequently amended, so the motion constitutes a facial attack.  Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir. 1977). As such, the Court may only consider a defect that is evident on the face of the Second Amended Complaint.  Id.

Defendants assert that because custody of Shayla had been given to Kasee and Amentt, under Pennsylvania law, Amentt and Kasee, not Plaintiff, were the owners of Shayla at the time of the shooting, and for this reason Plaintiff lacks standing to bring her claims.  In Pennsylvania, "a person who keeps or harbors such dog or has it in his care, and every person who permits such dog to remain on or about any premises occupied by him" is considered the dog's owner.  3 P.S. § 459-102.  The same statute, however, also states that a dog's owner "includes every person having a right of property in such dog."  3 P.S. § 459-102.  Because Plaintiff retained her property rights to Shayla under the foster agreement, she is also considered Shayla's owner under Pennsylvania law.  As such, Defendants' actions in shooting and euthanizing Shayla deprived Plaintiff of her property rights to Shayla, resulting in an injury-in fact.  Therefore, Plaintiff has standing to bring this case and Defendants' motion to dismiss for lack of standing will be denied.

## B.  Plaintiff's §1983 Claims

Plaintiff alleges Fourth Amendment, substantive due process, and procedural due process claims, as well as a Monell claim, against Defendants under 42 U.S.C. § 1983.  This statute provides that any person who, acting under color of state law, deprives someone of their

constitutional or statutory rights, may be held liable for damages.  In order to successfully state a
§ 1983 claim, a plaintiff must show: (1) the defendants acted under color of state law; (2) they
violated the plaintiff's federal constitutional or statutory rights; and (3) the violation of rights
caused an injury.  Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).  A defendant in a civil
rights action must have had personal involvement in the alleged wrongs.  Parratt v. Taylor, 451
U.S. 527, 537 n.3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d
Cir. 1976).  Therefore, liability cannot be predicated solely on a theory of respondeat superior.
Hampton, 546 F.2d at 1082.

### 1)  Plaintiff's Monell Claim Against the Horsham Township Police Department and Chief William J. Daly Will Be Dismissed

In Count II of the SAC, Plaintiff asserts a Monell claim against the Horsham PD and
Chief William J. Daly.  In Monell v. Department of Social Services of the City of New York, the
Supreme Court held that municipal entities are subject to § 1983 liability under limited
circumstances. 436 U.S. 658, 690 (1978).  A plaintiff may bring a § 1983 claim for damages
against a local government entity only when the alleged unlawful action was taken pursuant to a
policy or custom of the municipality, not when the action was an isolated act of an official.  Id. at
690-91.  "[T]he action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a
policy statement, ordinance, regulation, or decision officially adopted and promulgated by that
body's officers . . . [or be] pursuant to governmental 'custom' even though such a custom has not
received formal approval through the body's official decision making channels."  Id.

Plaintiff's Monell claim will be dismissed because Monell claims can only be brought
against municipalities, not police departments or individual officers.  See City of Canton, Ohio v.
Harris, 489 U.S. 378, 385 (1989) (Monell liability occurs when "the municipality itself causes
the constitutional violation at issue.") (emphasis in original) (explaining Monell, 436 U.S. 658

(1978)).  It is well settled in the Third Circuit that "in § 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  <u>Sanford v. City of Scranton</u>, No. 06-0739, 2006 WL 3242113, at *3 (M.D. Pa. Nov. 7, 2006) (quoting <u>Padilla v. Twp. of Cherry Hill</u>, 110 Fed. App'x 272, 278 (3d Cir. 2004)); <u>see also</u> <u>Irvin v. Borough of Darby</u>, 937 F. Supp. 446, 450 (E.D. Pa. 1996).  Because the Horsham PD is merely an arm of Horsham Township, Plaintiff's <u>Monell</u> claim against the Horsham Township Police Department will be dismissed with prejudice.

Plaintiff's <u>Monell</u> claim against Chief Daly in his official capacity also will be dismissed because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  <u>Monell</u>, 436 U.S. at 690 n.55.  An official capacity lawsuit against a police officer is also, essentially, against the Horsham Township pursuant to <u>Monell</u>.  Accordingly, Plaintiff's <u>Monell</u> claim against Chief Daly in his official capacity will be dismissed with prejudice.[6]

### 2)   Plaintiff's Fourth Amendment Claim

Plaintiff asserts a Fourth Amendment claim in Count I of the SAC against the officer defendants in both their individual and official capacities for the improper seizure of her dog.  In

---

[6]   Even if the Horsham Township was substituted as Defendant, the allegations against the Township would be dismissed because Plaintiff has not sufficiently pled facts to show an unconstitutional policy or custom.  Plaintiff argues that Defendants have failed to follow Horsham PD's Animal Control Policy and that by ignoring or failing to follow a published policy amounts to a custom.  In support of her argument, Plaintiff cites <u>Watson v. City of Kan.</u>, 857 F.2d 690 (10th Cir. 1988).  <u>Watson</u>, however, does not address the failure to follow a published policy.  <u>Id.</u>  And contrary to Plaintiff's argument, the Third Circuit has declined to find a municipality liable when the police officer's act is inconsistent with a township's policy on animals.  <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 215-16 (3d Cir. 2001).  Plaintiff also argues that Chief Daly's approval of the police officers' actions constitutes policy.  The Court is not persuaded by this argument.  The approval occurred a week and a half after Shayla's euthanization and therefore could not have been the "moving force" behind Plaintiff's injury.

Brown v. Muhlenberg Township, the Third Circuit held that the killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment.  269 F.3d 205, 210 (3d Cir. 2001).  When the dog does not pose an immediate danger and the owner desires to retain custody, the seizure is unreasonable.  Id. at 210-211.

Defendants move to dismiss the Fourth Amendment claim against all defendants in their official capacity, and against Chief Daly, Lieutenant Potts, Officer Nisbet, and Officer Ortiz in their individual capacity for lack of personal involvement.  These arguments will be considered in turn.

> i)      The Claim Against the Police Officers in Their Official Capacities Will Be Dismissed

As noted previously, an official capacity suit against a police officer is essentially a suit against the township which employs them.  For this reason and because Plaintiff has failed to adequately allege a municipal liability claim, Plaintiff's claim against the individual Defendants in their official capacities must also be dismissed.

> ii)     Chief William J. Daly

Chief William J. Daly was not present during the shooting or euthanization of Shayla. His only involvement occurred when he approved Lieutenant Pott's memorandum concerning Officer Woodruff's use of force.  This occurred several days after the unfortunate shooting. Plaintiff nevertheless argues that Chief William J. Daly has supervisory liability under § 1983. There are two ways a supervisor may be held personally liable under § 1983.  First, a supervisor is liable only if "with deliberate indifference to the consequences, [he] established and maintained a policy, practice or custom which directly caused the constitutional harm."  A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (internal citation omitted).  Second, he is liable if he either participated in violating the plaintiff's rights, directed

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.  Id.  To establish knowledge and acquiescence, Plaintiff must allege "1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and 2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval."  C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000) (internal citation omitted).

Plaintiff argues that Chief Daly, by approving Officer Woodruff's use of force and failing to follow Horsham PD's Animal Control Policy, created a custom and acquiesced in the violation of Plaintiff's rights.  Chief Daly gave his approval, however, a week and a half after Shayla's death.  Even if we accepted that Chief Daly's approval of Officer Woodruff's actions constituted a "custom," Plaintiff cannot show that this custom directly caused the constitutional harm she suffered, because the approval happened after Shayla's death.  Additionally, Chief Daly did not have contemporaneous knowledge of Officer Woodruff's actions and could not have acquiesced in them.  Therefore, Plaintiff has not sufficiently pled a Fourth Amendment claim against Chief Daly, and this claim against him will be dismissed with prejudice.

ii)     Lieutenant K. John Potts

Plaintiff also asserts supervisory liability against Lieutenant K. John Potts.  Lieutenant Potts, unlike Chief Daly, was present at the scene shortly after Shayla was shot.  He was the ranking officer when Officer Woodruff took Shayla to the SPCA to be euthanized.  Given these circumstances, Plaintiff has sufficiently pled Lieutenant Potts' contemporaneous knowledge of, and acquiescence in, Shayla's euthanization, which Plaintiff alleges is an improper seizure of her property.  Consequently, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim against Lieutenant Potts in his personal capacity will be denied.

14

iii)     Officers Andrew Nisbet and Jose Ortiz

The Court agrees with Plaintiff that Officers Andrew Nisbet and Jose Ortiz were personally involved in Shayla's improper seizure.   While neither officer shot Shayla, both participated in helping Officer Woodruff catch Shayla.   Officer Ortiz provided the catchpole which was used to remove Shayla from the yard, and Officer Nisbet assisted Officer Woodruff in dragging Shayla to Officer Woodruff's cruiser.   Because both officers participated in Shayla's seizure, Plaintiff has sufficiently pled the participation of these officers in the violation of her Fourth Amendment rights.   The Court will deny Defendants' motion to dismiss Plaintiff's Fourth Amendment claim against Officers Nisbet and Ortiz in their personal capacity.

### 3)     Plaintiff's Substantive Due Process Claim is Barred Under the More Specific Provision Rule

In Count I of the SAC, Plaintiff also brings a substantive due process claim against the individual defendants.   Defendants move to dismiss this claim because it is barred under the "more specific provision" rule.   Plaintiff argues to the contrary that because Defendants' behavior shocks the conscience, which is an element of substantive due process, she has properly pled a violation of her right to substantive due process.

It is well established law that when a constitutional claim is covered by a specific constitutional provision, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."   Cty. of Sacramento v. Lewis, 523 U.S. 833, 834-44 (1998).   Because the killing of her dog is a seizure of property covered under the Fourth Amendment, Plaintiff's claim is properly analyzed under the Fourth Amendment, and her substantive due process claim is foreclosed.[7]   See Betts v. New Castle

---

[7]     In the SAC and the Response to the Motion to Dismiss, Plaintiff argues that Defendants used excessive force in the seizure of her property and raises this claim too as a violation of her substantive due process rights.   An excessive force claim also falls squarely under the Fourth

Youth Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010) (when a claim falls squarely within Eight Amendment, substantive due process claim is foreclosed); Estate of Smith v. Marasco, 430 F.3d 140, 155 n.12 (3d Cir. 2005) (when a claim is covered by the Fourth or Eighth Amendment, it must be analyzed under that specific provision, not under substantive due process) (citing United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)); Brown v. Muhlenberg Twp., 269 F.3d 205, 210 (3d Cir. 2001) ("the killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment"); Schor v. North Braddock Borough, 801 F.Supp.2d 369, 379-80 (W.D. Pa. 2011) (excessive force used in the killing of a pet is properly evaluated under the Fourth Amendment, not under substantive due process); Copenhaver v. Borough of Bernville, No. 02-8398, 2003 WL 26616224, at *4-5 (E.D. Pa. Jan. 10, 2003) (when a dog is killed by a law enforcement officer, the Fourth Amendment precludes the pursuit of a substantive due process claim) (citing Brown, 269 F.3d at 210). Thus, Plaintiff's substantive due process claim will be dismissed with prejudice against all named Defendants.

### 4) Procedural Due Process Does Not Require A Hearing Before the Police Took Action Against Plaintiff's Dog

In Count III of the SAC, Plaintiff alleges that her procedural due process rights were violated. Defendants move to dismiss this claim, arguing that Plaintiff was not owed any process prior to the seizure of her dog. Although Plaintiff states generally in her response to Defendants' Motion to Dismiss that she has properly pled her procedural due process claim, she has not directly responded to Defendants' motion to dismiss this claim.[8]

---

Amendment. This would foreclose her substantive due process claim. Additionally, Plaintiff has withdrawn her excessive force claim, and therefore any claims relating to it need not be addressed.

[8] Plaintiff only discusses her substantive due process claim and its necessary element that conduct must "shock the conscience." She does not specifically discuss procedural due

Under the Fourteenth Amendment, a state may not deprive a citizen of her property without affording her due process of law.  U.S. Const. amend. XIV, § 1.  Usually, the state must provide notice and a hearing before a person is deprived of her property by state action.  Brown, 269 F.3d at 213 (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  However, the Third Circuit has held that when conduct is "random and unauthorized" such that state authorities cannot predict when unsanctioned deprivations of procedural due process will occur, predeprivation due process is practically impossible.  Id.  In such a case, notice and a hearing after the deprivation is all the process that is due.  Id.

In Brown, a police officer shot the plaintiffs' dog, which had escaped from their yard.  Id. at 209.  The Third Circuit held that the officer's actions were random and unauthorized such that the state was not in a position to provide for predeprivation process.  Id. at 214.  Postdeprivation process in the form of a civil action for conversion was sufficient to uphold the plaintiffs' right to procedural due process.  Id.

The instant case is similar to Brown.  There is no evidence that the shooting of Shayla was authorized or planned such that the state would have been able to provide predeprivation process.  Therefore, postdeprivation due process in the form of a civil action for conversion is sufficient to uphold Plaintiff's right to procedural due process.  As Plaintiff is bringing a claim for conversion against Defendants in this action, she will receive sufficient postdeprivation judicial process.  Accordingly, the Court will dismiss Plaintiff's procedural due process claim with prejudice against all Defendants.

---

process. The Court will still infer from the SAC that Plaintiff is contending that she was not afforded notice and a hearing prior to the events surrounding the demise of her dog.

## C.  Defendants Have Not Shown That They Are Entitled to Qualified Immunity

The individual Defendants charged with violating Plaintiff's Fourth Amendment rights argue that they are entitled to qualified immunity because even if they violated a clearly established right, the violation was objectively reasonable based upon the information in Defendants' possession at the time of the violation.  Qualified immunity applies so long as the officers' conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."   United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 398 (3d Cir. 2003).  Thus, courts must analyze whether: (1) the plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether the right was clearly established at the time of the alleged violation.  Id. at 398-99 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  Because Plaintiff has alleged an improper seizure in violation of her Fourth Amendment rights, the Court will focus its analysis on the second prong, whether the right was clearly established at the time of the alleged violation.

In order to show that a right is clearly established, a plaintiff must show "that every reasonable official would have understood that what he is doing violates that right."  Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012) (internal quotations omitted).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  Id.  In Brown v. Muhlenberg Twp., the Third Circuit held it is clearly established law that it is unlawful for a police officer to destroy a citizen's pet in the absence of a substantial public interest.  269 F.3d 205, 211 (3d Cir. 2001).

> As we have previously noted, the Supreme Court's 1984 decision in United States v. Jacobsen reaffirmed the well established proposition that a Fourth Amendment seizure of property occurs whenever there is some meaningful intrusion with an individual's possessory interest in that property and that destruction of property thus constitutes a seizure under the Fourth Amendment.  Moreover, we believe

that, at least after the enactment of 3 P.S. § 459-601 in 1983, a reasonable law enforcement officer in Officer Eberly's position would have realized that a person's dog is his personal property under Pennsylvania law.  Finally, we believe that . . . a reasonable officer would have understood that it was unlawful for him to destroy a citizen's personal property in the absence of a substantial public interest that would be served by the destruction.

Id.[9]  The court held "it would have been apparent to a reasonable officer that shooting [the dog] would be unlawful" and found that the police officer had not established that he was entitled to qualified immunity for shooting the plaintiffs' dog.  Id. at 211-12.

In the instant case, Shayla was contained in the yard of a house at the time of the shooting and was not a danger to the general public.  Shayla was not charging at Officer Woodruff when he shot the dog and the facts alleged show Officer Woodruff fired without provocation.  Moreover, Plaintiff alleges that the bullet which injured Shayla entered between Shayla's spine and right shoulder blade and exited near her upper front leg.  Plaintiff argues that this bullet trajectory proves that Shayla could not have been running towards Officer Woodruff, but in fact must have been running away from him at the time she was shot.  Accepting these facts as true, a reasonable officer in Officer Woodruff's position would have understood that it was illegal to shoot and euthanize Shayla, who was neither acting aggressively towards the officers nor posing a danger to the public, as she was contained in the yard.

Though Lieutenant Potts, Officer Nisbet, and Officer Ortiz did not actually shoot or euthanize Shayla, they supervised and assisted Officer Woodruff in his seizure of the dog.  An objectively reasonable officer would have realized that Officer Woodruff's conduct was illegal and that the officer had a responsibility not to participate in such activity.  See Abbott v. Latshaw, 164 F.3d 141, 149 (3d Cir. 1998) ("We also conclude that an objectively reasonable officer would have realized the illegality of [their fellow officer's] conduct.  Reasonable police

_____

[9]  3 P.S. § 459-601(a) states "All dogs are hereby declared to be personal property and subjects of theft."

officers should know from the established precedent . . . that their role is not to be participants in property deprivations without notice and an opportunity to be heard.") (referencing <u>Fuentes v. Shevin</u>, 407 U.S. 67 (1972)).   Furthermore, all the officers were on notice that their actions violated the Horsham PD's Animal Control Policy.   (<u>See</u> Doc. No. 12, Ex. A at 5.) Consequently, the officers are not entitled to qualified immunity at this time.

> **D.      Plaintiff Has Pled a Claim Under the Political Subdivision Tort Claims Act**

In Counts IV and V, Plaintiff brings negligence claims against the Horsham PD under § 8542(b)(2) and (b)(8) of the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), which states:

> (a)      Liability imposed.   A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1)      The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2)      The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). . . .
>
> (b)      Acts which may impose liability.   The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . .
>
> (2)      Care, custody or control of personal property.   The care, custody or control of personal property of others in the possession or control of the local agency.   The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency. . . .

(8)    Care, custody or control of animals.  The care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses. . . .

42 Pa. C.S.A. § 8542.  Defendants allege that Plaintiff has not properly pled a claim under the PSTCA because she has not established that Defendants had care, custody, or control of Shayla. In support of their argument, Defendants rely on <u>Schor v. N. Braddock Borough</u>, where the defendant officer was never closer than ten feet to the dog during the entirety of their encounter. 801 F. Supp. 2d 369, 381-82 (W.D. Pa. 2011).  The court held that the plaintiff was not able to establish that the defendants ever had control or possession of the dog and dismissed the plaintiff's PSTCA claim.  <u>Id.</u>  This case, however, is distinguishable because Officer Woodruff clearly established control over Shayla when he and Officer Nisbet dragged Shayla to Officer Woodruff's police cruiser.  Shayla remained in Officer Woodruff's custody until she was euthanized.  Therefore, Plaintiff has sufficiently pled a claim under the PSTCA.[10]

### E.    Plaintiff's Conversion Claim

In Count VI of the SAC, Plaintiff alleges a state law conversion claim against Chief Daly, Lieutenant Potts, Officer Woodruff, Officer Nisbet, and Officer Ortiz in their individual capacities.  Conversion is "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession."  <u>Norriton E. Realty Corp. v. Central-Penn Nat'l Bank</u>, 435 Pa. 57 (Pa. 1969) (citations omitted). Conversion can take one of four forms:

---

[10]  In Count IV, Plaintiff alleges negligence regarding her personal property which is her dog, Shayla.  In Count V, Plaintiff alleges negligence regarding her dog, Shayla.  It appears that both Counts cover the same conduct and that Count IV was included because subsection (b)(2) covers the care, custody, or control of "personal property" and that Count V was included because subsection (b)(8) covers the care, custody, or control of "animals."  If the same property is involved in both Counts, Plaintiff may be required in the future to elect on which Count to proceed, assuming that the elements of each Count are the same.

(1) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner;

(2) Transferring the goods in a manner which deprives the owner of control;

(3) Unreasonably withholding possession from one who has the right to it; or

(4) Seriously damaging or misusing the chattel in defiance of the owner's rights.

Id. at 60.  The intent required is not of conscious wrongdoing, but merely to exercise control over goods which is inconsistent with the plaintiff's rights.  Id.

Defendants move to dismiss Plaintiff's conversion claim against Chief Daly, Lieutenant Potts, Officer Nisbet, and Officer Ortiz for lack of personal involvement.  As discussed previously, Chief Daly's involvement is limited to approving a memorandum after the events had taken place.  Because of this limited involvement, the Court will grant Defendants' motion to dismiss Plaintiff's conversion claim against Chief Daly.  The Court will deny the motion with respect to Lieutenant Potts, Officer Nisbet, and Officer Ortiz, as the three defendants supervised and assisted Officer Woodruff in transferring Shayla from Kasee's yard to Officer Woodruff's police cruiser and ultimately to the SPCA for euthanization, which deprived Plaintiff of control of her dog.

## F.    Punitive Damages

Defendant argues that the claim for punitive damages against the individual Defendants should be dismissed because there is no evidence of outrageous conduct to support a punitive damage award.  Although a plaintiff is prohibited from recovering punitive damages against a state official sued in his official capacity, "[a] § 1983 plaintiff . . . may recover punitive damages against an official sued in a personal capacity if the official acted with a malicious or evil intent or in callous disregard of plaintiff's federally protected rights."  Bane v. City of Phila., No. 09–

22

2798, 2009 WL 6614992, at *15 (E.D. Pa. June 18, 2009) (citing Mitros v. Cooke, 170 F.Supp.2d 504, 508 (E.D. Pa. 2001)).  Here, Plaintiff contends that Defendants acted with callous disregard of her Fourth Amendment right to be free from illegal seizure when they shot and euthanized Shayla.  Since the allegations alleged in the SAC raise an inference that the conduct of Officer Woodruff, with the assistance of the other individual defendants, may amount to wanton, malicious conduct, Defendants' motion to strike Plaintiff's punitive damages claim will be denied at this stage.

### G.    Futility

Although Plaintiff has not requested that she be granted leave to amend her Complaint a third time, the Court will not grant her leave to amend because doing so would be futile.  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend . . . unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original).  "[A] district court need not grant leave to amend a complaint if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Kundratic v. Thomas, 407 Fed. App'x. 625, 630 (3d Cir. 2011) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).  For the claims that are dismissed here, Plaintiff has not alleged plausible claims against Defendants and no amendment of the SAC could cure the defects. Consequently, amending the complaint would be futile and leave to amend will not be granted.

### V.    CONCLUSION

Defendants' Motion to Dismiss (Doc. No. 11) will be granted in part and denied in part. For the reasons noted above, the Court will dismiss all claims against Chief Daly, and all claims against Officers Woodruff, Nisbet, Ortiz, and Lieutenant Potts in their official capacity.  The

Court will deny Defendants' Motion to Dismiss Plaintiff's Fourth Amendment claim in Count I as to Officer Woodruff, Officer Nisbet, Officer Ortiz, and Lieutenant Potts in their individual capacity.   The Court will grant Defendants' Motion to Dismiss Plaintiff's substantive due process claim in Count I, Monell claim in Count II, and procedural due process claim in Count III as to all Defendants.   The Court will deny Defendants' Motion to Dismiss Plaintiff's negligence claims against the Horsham PD in Counts IV and V.   Finally, the Court will deny Defendants' Motion to Dismiss Plaintiff's conversion claim in Count VI against Officer Woodruff, Officer Nisbet, Officer Ortiz, and Lieutenant Potts.[11]    An appropriate Order follows.

---

[11]  Defendants did not specifically move to dismiss Plaintiff's conversion claim against Officer Woodruff, but did move to dismiss all claims for lack of standing.  As discussed above, the Court has found that Plaintiff has standing to bring the conversion claim.